IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| HEATHER SUMMERS,<br><br>           Plaintiff,<br><br>vs.<br><br>MICHAEL CURD, in their individual capacities and as employees of the Omaha Police Department; and JAIME DESAUTELS, in their individual capacities and as employees of the Omaha Police Department,<br><br>           Defendants. | **8:21CV 453**<br><br>**MEMORANDUM AND ORDER** |

Before the Court is Defendants' Motion to Dismiss Heather Summers's, Third Amended Complaint. Filing No. 104. The Defendants' motion is denied as to Summers's individual capacity claims because although Summers filed the third amended complaint after the statute of limitations lapsed, the amendment does not relate back to her prior complaints, and Summers has not established entitlement to equitable estoppel, the Court concludes equitable tolling is appropriate because its own error contributed to the delay. The motion is granted as to Summers's official capacity claims because Summers sued the wrong entity, and, even construed as suing the right entity, fails to state a claim for municipal liability. This case highlights an area where the Rules Advisory Committee ought to consider reform.

## BACKGROUND

This is a straightforward excessive use of force and First Amendment retaliation claim that has been overshadowed by a winding and tortured procedural history. On May 29 and 30, 2020, Summers participated in a protest against police brutality in the

1

aftermath of the killing of George Floyd. While attending the protest, Summers was struck in the head by a projectile. Summers believes she was struck by a tear gas cannister fired by named defendants, Michael Curd and Jamie Desautels. Years of protected litigation followed.

A year and a half later, Summers filed the present lawsuit. Filing No. 1. The first complaint alleged violations of 42 U.S.C. § 1983, the Fourteenth Amendment, and Nebraska tort law. At the time of the initial complaint, Summers did not know the identities or employers of the officers who fired the projectile. So, she named John Doe in the place of the unknown officers alongside municipalities and law enforcement agencies.

In response to the Defendants' motion to dismiss, Summers sought leave to file an amended complaint, dropping certain parties and claims and adding others. *See Summers v. Omaha Police Dep't*, No. 8:21CV453, 2022 WL 3359303, at *3–4 (D. Neb. Aug. 15, 2022). The Court granted the motion, and Summers filed her First Amended Complaint. *Id.* at *4; Filing No. 36. At this stage, the defendants included the municipalities, the supervisors of the law enforcement agencies (the supervisor defendants), and John Doe defendants as a placeholder for the responsible officers, whose identities were still unknown. Filing No. 36.

The Defendants moved to dismiss the First Amended Complaint. The Court granted the motion without prejudice with respect to the supervisor agencies and municipalities because Summers failed to plead a municipal liability claim. Filing No. 57 at 2. However, the Court ordered discovery so the parties could obtain the identity of the assailants and determine whether Summers had a viable claim for municipal liability. *Id.* at 3. The Court ordered discovery to proceed on February 22, 2023. *Id.* In response,

Summers filed a Second Amended Complaint naming the Doe Defendants in their individual and official capacities as employees of their respective law enforcement agencies. Filing No. 58.

The Defendants moved to dismiss the Second Amended Complaint. Filing No. 65. The Court initially denied the motion to dismiss and ordered the Defendants to answer. *Summers v. City of Omaha*, No. 8:21CV453, 2023 WL 8446368, at *4 (D. Neb. Sept. 6, 2023). Once the Defendants answered, the case would proceed to discovery. *Id.* At this stage, the Court made a mistake. The Defendants who were ordered to answer were not named in the amended complaint. So, the Court was ordering non-parties to respond. *Summers v. Doe*, No. 8:21CV453, 2023 WL 8373472, at *3 (D. Neb. Dec. 4, 2023). This error ground the litigation to a halt. The Defendants moved for reconsideration, and nobody answered the Second Amended Complaint. Compounding the issue, the Court did not refer the case to a Magistrate Judge or structure pre-answer discovery in any way. So, for almost three months the case stayed in limbo.

Ultimately, on reconsideration, the Court noted the municipal and supervisor defendants were omitted from the second amended complaint and under no duty to answer. *Summers v. Doe*, No. 8:21CV453, 2023 WL 8373472, at *3 (D. Neb. Dec. 4, 2023). The Court referred the parties to the Magistrate Judge to conduct pre-answer discovery into the identity of the John Doe defendants. *Id.* At this stage, the parties had not engaged in any discovery regarding the identities of Summers's assailants.

Three months later, on February 23, 2024, Summers's counsel served subpoenas on the defendants requesting discovery on the identity of her assailants.[1] Filing No. 88. In response to the Defendants' written objections, Summers served amended subpoenas on May 9, 2024. Filing No. 94. The parties negotiated a protective order, which was entered by the Magistrate Judge on June 10, 2024. Filing No. 97; Filing No. 98. Based on materials received from Sarpy County, Summers dismissed the Sarpy County defendants on June 20, 2024. Filing No. 99. Summers represents that she received the body camera footage necessary to identify the individual defendants on July 5, 2024. Filing No. 109 at 3. She filed the currently operative, Third Amended Complaint, on July 9, 2024. Filing No. 103. The Third Amended Complaint names the Individual Defendants in their individual capacity and official capacity as employees of the Omaha Police Department. *Id.*

The individual defendants move for dismissal on four grounds: (1) Summers failed to effectuate service, (2) The Omaha Police Department does not have the capacity to sue or be sued, (3) the Third Amended Complaint naming the individual defendants was filed outside the four-year statute of limitations, and (4) the allegations do not relate back to the original claims.[2] Filing No. 105. Summers responds that service was effectuated, and the Court should apply equitable estoppel to excuse filing outside the statute of limitations. Filing No. 109. The Court ordered supplemental briefing on the applicability of equitable tolling. Filing No. 114; Filing No. 115.

---

[1] Earlier, in January, Summers served requests for production on the municipal defendants. However, these efforts did not bear fruit because the municipal defendants were no longer part of the case and the proper discovery device was a subpoena, not a request for production.
[2] The service argument is easily disposed of. Service was effectuated within the 90 day timeframe provided by Fed. R. Civ. P. 4(m). *See* Filing Noc. 111; Filing No. 112 (executed summons filed 44 days after the filing of the Third Amended Complaint).

4

**STANDARD OF REVIEW**

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp.*, 550 U.S. at 555). In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the plaintiff's obligation to provide the grounds for his entitlement to relief necessitates that the complaint contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp.*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

Under *Twombly*, a court considering a motion to dismiss may begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Although legal conclusions "can provide the framework of a complaint, they must be supported by factual allegations." *See id.* (describing a "two-pronged approach" to evaluating such motions: First, a court must accept factual allegations and disregard legal conclusions; and then parse the factual allegations for facial plausibility). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A statute of limitations defense can be resolved on a motion to dismiss if "the face of the complaint indicates the limitations period has expired." *Schmidt v. Newland*, 927 F.3d 1038, 1041 (8th Cir. 2019).

## DISCUSSION

The individual capacity claims against the individual defendants were filed after the statute of limitations expired, the amendment does not relate back to the date of the original pleading, and Summers has not shown intentional actions by the Individual Defendants or the diligence necessary for the Court to apply equitable estoppel under federal or Nebraska law. But this is the case where equity requires tolling the statute of the limitations because the Court's error prevented Summers from seeking discovery thereby missing the statute of limitations.

The official capacity claims must be dismissed because it is asserted against the Omaha Police Department rather than the City of Omaha and fails to allege that the City's policy or custom led to her injury.

### A. Statute of Limitations

The proper statute of limitations for this action is Nebraska's four year statute of limitations. 42 U.S.C. § 1983 does not contain a statute of limitations, so "federal law looks to the law of the State in which the cause of action arose" and applies the analogous limitations period. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). Neb. Rev. Stat. § 25-207 creates a four-year limitation period for "an action for an injury to the rights of the plaintiff, not arising on contract, and not hereinafter enumerated." Here, Summers's allegations are analogous to a common law intentional tort and would, thus, fall within the scope of § 25-207.

6

The statute of limitations began to run, at the latest, on May 30, 2020. Under federal law,[3] a § 1983 action accrues "when the plaintiff has a complete and present cause of action," in other words "when the plaintiff can file suit and obtain relief." *Wallace*, 549 U.S. at 388 (internal quotations omitted). In an excessive force case, the cause of action accrues when the police officer uses excessive force. *Spradling v. Hastings*, 912 F.3d 1114, 1119 (8th Cir. 2019). For example, in *Spradling*, a § 1983 action arising from a police shooting accrued on the date plaintiff's decedent was killed. *Id.* Here, Summers's cause of action accrued, at latest, when Summers was struck with a projectile on May 30, 2020. So, the statute of limitations began to run on May 30, 2020, and the limitations period ended on May 31, 2024.

Summers filed her Third Amended Complaint on July 9, 2024, over a month after the statute of limitations ran. So, unless the amendment relates back to her prior pleading or the statute of limitations can be excused, Summers's Third Amended Complaint must be dismissed as untimely.

**B. Summers's Amendment Does Not Relate Back to the Date of Her Original Complaint**

Summers's amended complaint would be timely under Fed. R. Civ. P. 15(c)(1)(C) if it "relates back" to the date of her earlier, timely filed, complaints. But, under binding precedent, the real names of Summers's assailants for the fictitious John Does do not relate back to her earlier pleadings. So, the Court cannot excuse the late filled amendment based on Rule 15(c).

---

[3] In a § 1983 the statute of limitations is supplied by state law but the accrual of the cause of action is governed by federal law. *Wallace*, 549 U.S. at 388.

An amended pleading substituting a party is timely, even if filed outside the statute of limitations, if the amendment "relates back to the date of the original pleading." Fed. R. Civ. P. 15(c). Fed. R. Civ. P. 15(c)(1)(C) addresses amendments that "change[] the party . . . against whom a claim is asserted." Such an amendment "relates back" if the new party: (1) "received such notice of the action that it will not be prejudiced in defending on the merits; and" (2) "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." *Id.* Rule 15(c) is meant "to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 550 (2010).

A frequently litigated question arises in situations like this, in which a litigant does not know who injured her and names a fictitious John Doe party in the place of the person who harmed her. *See* Carol M. Rice, Meet John Doe: It Is Time for Federal Civil Procedure to Recognize John Doe Parties, 57 U. Pitt. L. Rev. 883, 889–907 (1996) (explaining the intertwined history of John Doe pleadings and Rule 15). The precise issue is whether naming a John Doe defendant is a "mistake concerning the proper party's identity," that falls within the scope of Rule 15(c)(1)(C)(ii).

In *Heglund*, the Eighth Circuit answered no. *Heglund v. Aitkin Cnty.*, 871 F.3d 572, 579–80 (8th Cir. 2017). There, the plaintiff sued scores of defendants, including several John Does, for illegally accessing her driver's license information. *Id.* at 576. The plaintiff sought to amend to name the officer who accessed her information in place of the John Doe defendant after the statute of limitations ran. *Id.* at 577. The Eighth Circuit held this

amendment did not relate back because the Rules Committee used the term "mistake" in 15(c)(1)(C)(ii), which "implies inadvertence or a sincere but wrong belief." *Id.* at 579. By contrast, "the Heglunds did not make a 'mistake' in the ordinary sense of the word when they intentionally sued 'John Doe' while knowing that he was not the proper defendant." *Id.* at 581.[4]

*Heglund* forecloses Summers's Rule 15 argument. Summers's Third Amended Complaint "amends a John Doe pleading to substitute a real person." *Id.* The use of John Doe in the initial complaint was not a "mistake" for the purpose of Rule 15(c)(1)(C)(ii). So, the Third Amended Complaint does not relate back to the date of the original complaint and is untimely.

### C. Summers Cannot Rely on Equitable Estoppel to Avoid the Statute of Limitations

Summers asserts that the Court should apply equitable estoppel to excuse the late filed amended complaint. Generally, equitable estoppel bars a defendant from asserting a statute of limitations defense, if the defendant's inequitable conduct led to the late filing. The Eighth Circuit has indicated a federal court should analyze both the state and federal equitable estoppel principles, so the Court discusses both. *Bell v. Fowler*, 99 F.3d 262, 266–67 (8th Cir. 1996).

Federal equitable estoppel does not apply because Summers cannot make the requisite showing of behavior "designed to, or was unmistakably likely to, mislead" on the

---

[4] The Eighth Circuit is not alone. The other circuits who have considered the issue post-*Krupski* (which adopted a defendant-focused interpretation of Rule 15's notice provisions) have also concluded naming a John Doe party is not a "mistake" under Rule 15. *Ceara v. Deacon*, 916 F.3d 208, 213 (2d Cir. 2019); *Winzer v. Kaufman Cnty.*, 916 F.3d 464, 471 (5th Cir. 2019); *Zakora v. Chrisman*, 44 F.4th 452, 482 (6th Cir. 2022); *Herrera v. Cleveland*, 8 F.4th 493, 499 (7th Cir. 2021); *Boss v. City of Mesa*, 746 F. App'x 692, 695 (9th Cir. 2018). For pre-*Krupski* cases *see e.g.*, *Bell v. City of Topeka, KS*, 279 F. App'x 689, 692 (10th Cir. 2008); *Lindley v. City of Birmingham, Ala.*, 452 F. App'x 878 (11th Cir. 2011).

part of the defendants. *Heglund*, 871 F.3d at 578. For example, in *Schrader* a cruise ship passenger named the wrong defendant as the operator of the vessel and tried to amend after the contractual limitations period ran. *Schrader v. Royal Caribbean Cruise Line, Inc.*, 952 F.2d 1008, 1014 (8th Cir. 1991). The Eighth Circuit held there was a triable claim for equitable estoppel because the cruise lines' attorney acknowledged the passenger's claim by stating he represented "the cruise line" (all while "meticulously avoid[ing] using any corporate name") and a representative from the company represented to the passenger that notice to the incorrectly named corporate entity was "sufficient." *Id.* By contrast, the *Heglund* court found the police department's filing of a motion to dismiss that delayed the commencement of discovery was not misleading behavior. *Heglund*, 871 F.3d at 578; *see also Bell*, 99 F.3d at 268 (declining to apply equitable estoppel when defendant inadvertently provided the wrong date of the underlying event because federal equitable estoppel "requires fraud"). Here, Summers does not allege that Defendants intentionally provided the wrong identity of the officers who fired the projectile. Instead, she argues that Defendants "made numerous objections, required a Protective Order which was shortly approved, produced some documents related to Plaintiff making a citizen's complaint about getting hurt, but ultimately did not produce the needed documents to identify the officers until July 5, 2024." Filing No. 109 at 3. Just as "[f]iling a prompt motion to dismiss is not the sort of inequitable conduct that calls for the application of" equitable estoppel, standard discovery practices like objecting to a subpoena and requesting a protective order before producing sensitive or confidential materials is not behavior "designed to, or was unmistakably likely to, mislead." *Heglund*,

10

871 F.3d at 578. Without a misleading action by Defendants, the Court cannot apply equitable estoppel. *Schrader*, 952 F.2d at 1014.

The same issue precludes the Court from applying equitable estoppel under Nebraska state law. Nebraska courts apply equitable estoppel when "when one lulls his or her adversary into a false sense of security, thereby causing that person to subject his or her claim to the bar of the statute of limitations, and then pleads the very delay caused by his or her conduct as a defense to the action when it is filed." *Rauscher v. City of Lincoln*, 691 N.W.2d 844 (Neb. 2005). Specifically, under Nebraska law, a Court may apply equitable estoppel if a plaintiff shows:

> (1) conduct which amounts to a false representation or concealment of material facts or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct will be acted upon by, or influence, the other party or other persons; (3) knowledge, actual or constructive, of the real facts; (4) lack of knowledge and the means of knowledge of the truth as to the facts in question; (5) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (6) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel.

*Bolden v. Bd. of Regents*, 973 N.W.2d 373, 390 (Neb. 2022). For example, in *Olsen*, the Nebraska Supreme Court applied equitable estoppel to an untimely quiet title claim because the defendant promised for years that the defendant would fix the defects in the title. *Olsen v. Olsen*, 657 N.W.2d 1, 8 (Neb. 2003); *see also Rauscher*, 691 N.W.2d at 852 (applying equitable estoppel when the city falsely represented that an employee would be paid certain unpaid wages at the end of his employment). Here, Summers cannot meet the first two elements of equitable estoppel. Defendants did not misrepresent the identity of the officers, lie that discovery was forthcoming, or take any

other action that induced Summers into not requesting discovery. Nothing in the record suggests Defendants objected to the subpoena or requested a protective order to induce Summers into not filing before the statute of limitations. Overall, equitable tolling is not available under Nebraska law because Defendants did not "lull [Summers] into a false sense of security, thereby causing [Summers] to" miss the statute of limitations. *Raucsher*, 691 N.W.2d at 852.

To summarize: the Court cannot apply equitable estoppel under state or federal law because Summers has not shown inequitable conduct by Defendants.

### D. The Court Will Apply Equitable Tolling Because an Error by the Court Delayed Discovery

The Court will apply equitable tolling under Nebraska law for the three months between the Court's order on Defendants' Third Motion to Dismiss (September 6, 2023) and the Court's order on Defendants' Motion for Reconsideration (December 4, 2023), because the Court's mistake prevented Summers from seeking discovery.

In 42 U.S.C. § 1983 cases, equitable tolling is governed by state law. *Montin v. Est. of Johnson*, 636 F.3d 409, 413 (8th Cir. 2011). Nebraska law recognizes "[t]he doctrine of equitable tolling permits a court to excuse a party's failure to comply with the statute of limitations where, because of disability, irremediable lack of information, or other circumstances beyond his or her control, the plaintiff cannot be expected to file suit on time." *State v. Conn*, 914 N.W.2d 440, 446 (Neb. 2018). "Equitable tolling requires no fault on the part of the defendant" but "does, however, require due diligence on the part of the claimant." *Id.*

Here, for the 89 days between the order on the Third Motion to Dismiss and the Motion for reconsideration, Summers's was effectively enjoined from perusing discovery

12

because the Court tied the commencement of discovery to an impossible occurrence (an answer from non-parties). Nebraska Courts apply equitable tolling, when "the claimant . . . was enjoined from bringing a claim by another court or governmental entity." *In re Estate of Fuchs*, 900 N.W.2d 896, 905–06 (Neb. 2017) (collecting cases). *Green v. Doe*, a Fifth Circuit case applying the same principle under Texas law to factually analogous circumstances, is instructive. 260 Fed.Appx. 717 (5th Cir. 2007). There, like here, the plaintiff named a John Doe defendant and required discovery to determine the identify the correct correctional officer. *Id.* at 718. The district court denied plaintiff's motion for pre-answer discovery, the statute of limitations ran, and the district court denied a motion to amend as time barred. *Id.* The Fifth Circuit, applying equitable tolling, reversed because plaintiff's "legal remedy was precluded by the erroneous denial of discovery." *Id.* at 720. Thus, "the delay in determining the identity of 'John Doe' [was] not attributable to" the plaintiff's actions. *Id.* at 719. Here, the Court's error precluded Summers from seeking discovery for three months. Specifically, unlike prior orders that contemplated pre-answer discovery, the Court's September 6 order tied the commencement of discovery to an answer from "Defendants City of Omaha, Douglas County, Sarpy County, Todd Schmaderer, Timothy Dunning, Jeff Davis, and John A. Bolduc, in their individual capacities, and deputies or officers Jane or John Doe." Filing No. 75 at 8. This was impossible. None of those parties were named in the Third Amended Complaint and could not answer. *See Summers v. Doe*, No. 8:21CV453, 2023 WL 8373472, at *3 (D. Neb. Dec. 4, 2023) (reaching the same conclusion). Thus, the Court tied the discovery Summers needed to an event that would never happen. This left the case in limbo, until the Court ruled on the Motion to Reconsider, and referred the matter to the Magistrate

13

Judge for pre-answer discovery into the identity of the Doe defendants. So, for those three month "the delay in determining the identity of 'John Doe'" was attributable to the Court's actions—not Summers's. *Green*, 260 Fed. Appx. at 719. The Court finds the equities[5] merit tolling the limitations periods during that period because Summers should not be punished for the Court's error.

The statute of limitations was tolled for 89 days. Summers's Third Amended Complaint was filed 70 days after the statute of limitations ran. Thus, accounting for the period in which the statute of limitations was tolled, Summers's Third Amended Complaint was timely.

### E. The Federal Rules Committee Should Consider Reform

While ultimately Summers's claims survive, the Court believes there is a much cleaner solution to this recurring problem—namely amendments to Rule 15 allowing John Doe amendments to relate back to an earlier pleading.

The current text of Rule 15 is at odds with the purpose of the Federal Rules of Civil Procedure generally and the notice-focused purpose of Rule 15 specifically. The Federal Rules embody a preference—shared by many Judges—for resolving cases on the merits, rather than procedural technicalities. Wright & Miller, 4 § 1029 Purpose and Construction of Rules, 4 Fed. Prac. & Proc. Civ. § 1029 (4th ed.). Rule 15 embodies these same interests, ensuring a plaintiff is not punished for naming the wrong party, so

---

[5] Further informing the Court's equitable judgement, is the lack of prejudice to the Individual Defendants and diligence of Summers. Specifically, the Individual Defendants were on notice that they were implicated in this lawsuit before the limitations period ran. Counsel for the Individual Defendants (who has been defending the City of Omaha in this action) received and reviewed records at the time objected to Summers's subpoenas in April 2023 and requested a protective order in May 2023. So, while Summers was not aware of the John Does' identities until after the statute of limitations ran, the Individual Defendants were. Likewise, while the status of discovery was confusing throughout this litigation, Summers has consistently attempted to ascertain the identities of the Doe defendants.

long as the right party had notice of the suit. *Krupski*, 560 U.S. at 550. Fed. R. Civ. P. 15(c)(1)(C) provides muscular protection for the defendant's notice interests. But the current mistake-focused language hinders the plaintiff's interest in merits adjudication and provides little if no additional protection for the defendant's notice interest. Put another way, whether a plaintiff mistakenly (by naming the wrong operator of a cruise ship) or intentionally (by naming a John Doe party) names the wrong party has nothing to do with whether the defendant knows they may be implicated in a pending lawsuit. *Krupski*, 560 U.S. at 550. In sum, the mistake language acts like the human appendix, lying dormant and doing little to ensure notice in the mine run of cases and exploding, preventing courts from reaching the merits in a small, but recurring, class of cases.[6] The Rules Committee can remove the word "mistake" without harming the function or purpose of Rule 15.

The problems with the current text of Rule 15 are exacerbated by two features of modern realities of civil rights litigation. First, not allowing John Doe amendments to relate back does little to improve notice to John Doe officers because such officers are often represented by the same attorneys and indemnified under the same insurance policies as defendant police departments. *See* Joanna C. Schwartz, *Police Indemnification*, 89 N.Y.U. L. Rev. 885, 915–16 (2014) (summarizing an empirical study showing "law enforcement officers almost never contribute to settlements and judgments" and

---

[6] Under some circumstances, courts, including this one, have alleviated the unfairness caused by Rule 15's mistake language through equitable doctrines but these doctrines are no substitute for an amendment to the rules. *See e.g., Lacy v. Vill. of Maywood*, No. 1:21-CV-3081, 2022 WL 4048538 (N.D. Ill. Sept. 2, 2022) (equitable estoppel); *Rodriguez v. City of Austin*, No. 1-21-CV-01087-RP, 2024 WL 3242279, at *2–4 (W.D. Tex. June 26, 2024) (collecting cases applying equitable tolling). Specifically, application of these is rare and may depend on substantive state law. *See Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990) ("Federal courts have typically extended equitable relief only sparingly."); *Hardin v. Straub*, 490 U.S. 536, 539 (1989). This invites variance between judges (who must decide whether a given case is the rare one where fairness requires equitable relief) and jurisdictions (depending on the forum state's tolling and estoppel rules) that is inconsistent with the Federal Rules of Civil Procedure's goal of uniform federal procedural law. *Hanna v. Plumer*, 380 U.S. 460, 472 (1965).

15

remarking such officers "are almost always represented by the city's or county's attorneys, or by attorney's hired by union representatives"); Filing No. 105 (the Individual Defendants' motion to dismiss, signed by the City Attorney). And departments defending use of force cases must investigate the circumstances underlying the complaint to litigate the case and often know the identity of the officer long before the Plaintiff can request discovery. Brian J. Zeiger & Elizabeth G. Thompson, Taryn C. Zucker, Patrick J. Fitzmaurice, Emily B. Ryan, *A Change to Relation Back*, 18 Tex. J. C.L. & C.R. 181, 196 (2013). Second, in civil rights cases, courts are required to resolve qualified immunity at the earlier possible juncture, often before discovery, and the defendant is entitled to interlocutory appellate review before the case can continue. *Payne v. Britten*, 749 F.3d 697, 700–01 (8th Cir. 2014). These procedural innovations mean there is often substantial and time-intensive litigation before the plaintiff has the chance to seek discovery into the identity of the defendant, eating into the limitations period.

The Court is not the first to recognize this problem. The Rules Advisory Committee considered such a reform in 2006, recognized the policy issues at play, but declined to adopt an amendment. Minutes of the Civil Rules Advisory Committee at 26–27 (May 2006). Other courts have recognized an amended rule may be sound public policy. *Heglund*, 871 F.3d at 581 ("There may well be sound policy arguments for permitting relation back when a plaintiff amends a John Doe pleading . . .. But we think these concerns are best directed to the rulemakers, because it would unduly strain the plain language of the present rule to say that Rule 15(c) encompasses the [plaintiff's] amendment."); *Singletary v. Pennsylvania Dep't of Corr.*, 266 F.3d 186, 202 (3d Cir. 2001); *Shuhaiber v. Dec*, No. 1:17-CV-05331, 2020 WL 6781798, at *5 (N.D. Ill. Nov. 17, 2020).

Commentators agree.[7] Scholars have advanced textural fixes, some narrow and some broad, to address this problem.[8] The Court takes no position on the ideal language but believes the Rules Committee ought to revisit this recurring and important issue.

### F. Summers's Official Capacity Claims Must be Dismissed

One loose end remains. Defendants argue that Summers's official capacity claims must be dismissed because the Omaha Police Department does not have the capacity to sue or be sued. The Court agrees on slightly different grounds.

For background: individual and official capacity claims against a state employee under 42 U.S.C. § 1983 are legally distinct. "Suits against state officials in their official capacity . . . [are] treated as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). "Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, 'the entity's policy or custom must have played a part in the violation of federal law'" and a municipality cannot be vicariously liable. *Id.* (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). "[T]he only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses."

---

[7] *Rice, id.* at 952–54; Samuel Rossum, *Constitutional Whodunnits: Maintaining Section 1983 and Bivens Suits Against Unidentified State Actors*, 25 U. Pa. J. Const. L. 614, 648 (2023); Edward F. Sherman, *Amending Complaints to Sue Previously Misnamed or Unidentified Defendants After the Statute of Limitations Has Run: Questions Remaining From the Krupski*, 560 U.S. 538 *Decision*, 15 Nev. L.J. 13299, 1345 (2015); Howard M. Wasserman, *Civil Rights Plaintiffs and John Doe Defendants: A Study in* Howard M. Wasserman, *Civil Rights Plaintiffs and John Doe Defendants: A Study in Section 1983 Procedure*, 25 Cardozo L. Rev. 793, 815–21 (2003); Zeiger et. al, *Id.* at 194–95; Steven S. Sparling, *Relation Back of "John Doe" Complaints in Federal Court: What You Don't Know Can Hurt You*, 19 Cardozo L. Rev. 1235, 1282 (1997); Meg Tomlinson, *Krupski and Relation Back for Claims Against John Doe Defendants*, 86 Fordham L. Rev. 2071, 2103–05 (2018); Rebecca S. Engrav, *Relation Back of Amendments Naming Previously Unnamed Defendants Under Federal Rule of Civil Procedure 15(c)*, 89 Cal. L. Rev. 1549, 1552–53 (2001).

[8] *See e.g. Singletary*, 266 F.3d at 202 ("the party to be brought in by amendment . . . knew or should have known that, but for a mistake *or lack of information* concerning the identity of the proper party . . . ."); Zeiger et. al *id.* at 197 ("15(c)(1)(C)(iii): When a complaint properly pleads a 42 U.S.C. §1983 claim involving excessive force, Monell, or other police brutality, that complaint may be amended up until the close of discovery, only to substitute the caption from John Doe(s) to the name(s) of the actual defendant(s)."); Rice *id.* at 953 ("knew or should have known that, but for a mistake concerning the identity of the proper party *or the alleged lack of knowledge as to the proper party's identity* . . . .") (emphasis added).

*Id.* By contrast, an individual capacity suit "seek to impose individual liability upon a government officer for actions taken under color of state law" and does not require the plaintiff to connect the violation of their rights to a "policy or custom." *Id.*

The City of Omaha, not the Omaha Police Department, is the proper defendant for Summers's official capacity claim. Capacity to be sued is determined by reference to state law. Fed. R. Civ. P. 17(b). Under Nebraska law, cities and municipalities have capacity "to sue and be sued." Neb. Rev. Stat. § 14-101. But courts have consistently held that police departments, as agencies subordinate to a political subdivision, do not. *Parsons v. McCann*, 138 F. Supp. 3d 1086, 1097–98 (D. Neb. 2015) (collecting state and federal cases). Indeed, Summers previously conceded as much in this litigation. *Summers*, 2022 WL 3359303, at *2. Thus, the proper defendant for Summers's official capacity claims is the City of Omaha, not the Omaha Police Department.

In the past, under similar circumstances, the Court has "liberally interpret[ed] the plaintiff's allegations with respect to the Police Department as allegations of conduct by the City of Omaha." *Roberts v. City of Omaha*, No. 4:11CV129, 2011 U.S. Dist. LEXIS 160143 at *8 (D. Neb. Aug. 8, 2011). But there is a more fundamental issue here. To recover under an official capacity claim, Summers must allege "the entity's policy or custom must have played a part in the violation of federal law." *Hafer*, 502 U.S. at 25. Here, the Third Amended Complaint contains no references to policies, customs, or training. Absent these types of allegations, there is no basis for municipal liability and Summers's fails to state a plausible claim for municipal liability. Therefore, while Summers's individual capacity damages claim survives, her official capacity claims must be dismissed.

## CONCLUSION

This case is a mess. Because the Court contributed to the mess, equitable tolling is merited. Taking account of the time when the statute of limitations was tolled, Summers's amended complaint is timely. But, because the Omaha Police Department lacks capacity to sue or be sued and Summers has not pled any allegations making a plausible case for municipal liability against the City of Omaha, her official capacity claims must be dismissed.

Therefore, IT IS ORDERED:

1. Defendants' Motion to Dismiss (Filing No. 104) is granted in part, as to Summers's official capacity claims, and denied in part, as to Summer's individual capacity claims.

2. The Individual Defendants shall answer in accordance with Fed. R. Civ. P. 12(a)(1)(A). The Magistrate Judge is directed to enter a scheduling order to allow the Parties to exchange the discovery necessary for the Court to expeditiously resolve the Individual Defendants' qualified immunity defense.

Dated this 28th day of March, 2025.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge